UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────x

MICHELLE FORMAN,

       Plaintiff,

   –v–                          No. 14-CV-6282-LTS

CITY OF NEW YORK,

       Defendant.

─────────────────────────────────────────x

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Michelle Forman ("Forman") brings this action against Defendant the City of New York ("City"), asserting eleven causes of action.  Specifically, Forman asserts disability discrimination claims for wrongful termination, failure to accommodate, and denial of reinstatement under: 1) the Americans with Disabilities Act ("ADA"); 2) the Rehabilitation Act; 3) the New York State Human Rights Law ("SHRL"); and 4) the New York City Human Rights Law ("CHRL"). Forman also asserts claims for: 5) a violation of Civil Service Law ("CSL") § 73; 6) a violation of her Collective Bargaining Agreement ("CBA"); 7) a violation of Rule 6.1.1 of the New York City Personnel Rules and Regulations ("NYC PRR"); 8) a violation of Rule 6.1.9 of the NYC PRR; 9) negligence; 10) negligent hiring, training, retention, and supervision; and 11) respondeat superior.

The Court has original jurisdiction of the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of the state and city claims pursuant to 28 U.S.C. § 1367(a).

The City moves under Federal Rule of Civil Procedure 12(b) to dismiss each of the claims against it. (<u>See</u> docket entry no. 41.)[1]  The Court has reviewed thoroughly all of the parties' submissions and arguments.  For the following reasons, the City's motion is granted.

B<span style="font-size:smaller">ACKGROUND</span>[2]

Between 2002 and 2012, the City employed Forman as a School Safety Agent in the NYPD. (Am. Compl. ¶ 14.)  As a School Safety Agent, Forman's duties primarily involved physical activity.  For example, she was responsible for patrolling the school building and its vicinity to "maintain order" and "preserve the peace."  (<u>Id.</u> Ex. 7, at 1.)  The job involved, among other things, identifying and removing unauthorized people from the premises; responding to and breaking up altercations between students and other people; and providing aid to sick or injured people.  (<u>Id.</u>)  Forman was also responsible for apprehending violators of the Penal Law, issuing them summonses or arresting them, and escorting arrestees to the local precinct.  (<u>Id.</u> at 2.)  Forman's more sedentary duties were related to the physically demanding ones.  She was required, for example, to prepare reports about unusual and criminal events and the actions she took in response to them. (<u>Id.</u>)

In February 2011, the City placed Forman on leave of absence so she could undergo a "medically-necessary bunionectomy."  (<u>Id.</u> ¶ 15.)  The following year, Forman received a letter

---

[1] The City raises issues under Rules 12(b)(1) and 12(b)(6).

[2] The following facts are drawn principally from the allegations of and exhibits to the First Amended Complaint (docket entry no. 39 ("Amended Complaint" or "Am. Compl.")) and are taken as true for purposes of the instant motion. Additional facts are drawn from a Verified Complaint (the "Verified Complaint") filed with the SDHR, which is also referred to in the Amended Complaint.

from the NYPD stating that, pursuant to CSL § 73,[3] her employment was terminated as of April 13, 2012.  (Id. ¶ 17; Ex. 2.)  The letter also stated that Forman could apply for reinstatement within a year if she was "physically and mentally fit to perform the duties of [her] former position."  (Id. ¶ 17; Ex. 2.)

Forman applied for reinstatement in March 2013.  (Id. ¶ 18.)  Along with the application, Forman submitted a document from her physician stating that she had reported herself as disabled due to hypertension, osteoarthritis in her feet, and a herniated disc in her spine.  (Id. Ex. 3, at 2.) Forman claims these conditions had the combined effect of substantially limiting her major life activities.  (Id. ¶ 19.)  The physician ostensibly certified that Forman was "fit to perform the duties of his/her position & should be reinstated."  (Id. ¶ 18; Ex. 3, at 2.)  The physician clarified, however, that Plaintiff was only followed by the practice for hypertension and that the certification was given only "in regards to [Forman's] hypertension."  (Id. Ex. 3, at 2.)

In response to the application, the City, through its agent the Department of Citywide Administrative Services ("DCAS"), performed its own physical examination of Forman.  In April

---

[3] CSL § 73 reads, in relevant part:

> When an employee has been continuously absent from and unable to perform the duties of his position for one year or more by reason of a disability . . . his employment status may be terminated and his position may be filled by a permanent appointment. Such employee may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination to be conducted by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his former position, he shall be reinstated to his former position, if vacant, or to a vacancy in a similar position or a position in a lower grade in the same occupational field in his former department or agency.

N.Y. Civ. Serv. Law § 73 (McKinney 2017).

2013, DCAS notified Forman that her application was denied because the results of the examination indicated she was "not medically fit to perform the duties of [her] position as a School Safety Agent."  (Id. ¶ 20; Ex. 4.)  The same letter also advised Forman that she could reapply for reinstatement in the future.  (Id. Ex. 4.)

In June 2013, Forman enlisted the Center for Independence of the Disabled ("CID") to send a letter to DCAS requesting that the NYPD accommodate her disability.  The letter stated that, "Due to her herniated disc, high blood pressure and arthritis [Forman] is not able to sit or stand for long periods of time."  (Id. Ex. 5.)  It continued, "Ms. Forman is requesting a transfer or job modification from her current position to another position that would accommodate her disability.  For example she could be assigned to a position such as a receptionist that would allow her to rise from her desk when long sitting situations exacerbate her condition."  (Id.)

In September 2013, DCAS denied Forman's request for an accommodation.  (Id. ¶ 22.)   In the denial, DCAS relayed the NYPD's findings that "based on their evaluation of [Forman's] medical condition and of the duties of the position, she would not be able to perform the essential duties of School Safety Agent, with or without a reasonable accommodation," and that "there were no vacant positions at the NYPD that would reasonably accommodate Ms. Forman's inability to stand or sit for long periods."  (Id. Ex. 6.)  In support of the findings, DCAS noted that "Ms. Forman has provided no documentation that her condition has improved sufficiently since her most recent examination with the NYPD Medical Officer as to enable her with a reasonable accommodation to perform a School Safety Agent's essential functions."  (Id.)

On September 30, 2013, Forman filed a Charge of Discrimination against the City with the Equal Employment Opportunity Commission ("EEOC") and a Verified Complaint with the New York State Division of Human Rights ("SDHR").  (Id. ¶ 6; Ex. B to Kurland Decl.)  The

SDHR issued a Determination and Order After Investigation, concluding that "[t]he record does not support a finding that [the City] unlawfully discriminated against [Forman] by refusing to allow her to return to work since she is not medically able to perform her duties." (Ex. 3 to Mou Decl. at 2, docket entry no. 49.) It also stated:

> [Forman] contends that there are sedentary positions that she can perform and that [the City] has a policy to accommodate "qualified individuals with disabilities"; however, [Forman] would have to apply for specific jobs that she believes she could perform and she would still have to show that she is qualified for, and able to perform the essential duties of, such jobs. This would not constitute a reinstatement, but would be a new job application.

(Id.) The Verified Complaint was therefore ordered dismissed. (Id.)

In May 2014, Forman received a Notice of Right to Sue from the EEOC. (Id. ¶ 7.)

<u>DISCUSSION</u>

I.      <u>The Legal Standard</u>

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes the truth of the factual allegations asserted in the complaint and draws all reasonable inferences in favor of the plaintiff.  See Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).  To survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face."  Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).  The Court will not "accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A defense based upon a statute of limitations is properly brought under a motion to dismiss for failure to state a claim if the complaint and documents integral to it establish, when viewed in the light most favorable to the Plaintiff, that the claim asserted is time-barred.  See Francis v. Blaikie Group, 372 F. Supp. 2d 741, 743 (S.D.N.Y. 2005).

In ruling on a Rule 12(b)(6) motion, the Court is to consider "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court is also to consider "documents upon which the complaint relies and which are integral to the complaint." See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). The complaint "must make a clear, definite and substantial reference to the documents" for any such documents to be deemed incorporated by reference. Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003).

II.    Forman's Federal Claims

a.    Forman's ADA Claim for Wrongful Termination Is Time-Barred

The City moves to dismiss Forman's ADA claim, insofar as it alleges wrongful termination, as time-barred because the requisite administrative charge was not timely filed.

A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC or an equivalent agency "within three hundred days after the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1) (LexisNexis 2005). Failure to do so renders the claim time-barred. See Hoffman v. Williamsville School Dist., 443 Fed. App'x 647, 649–50 (2d Cir. 2011) (affirming a decision to dismiss an ADA claim for failure to accommodate because it was filed more than 300 days after the accommodation was denied); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69–70 (2d Cir. 2006) (affirming a decision to dismiss Title VII retaliation claims because they were filed with the EEOC more than 300 days after the alleged instances of retaliation).

The City terminated Forman's employment on April 13, 2012. Forman's Amended Complaint alleges that she filed her Charge of Discrimination with the EEOC and the SDHR on

September 30, 2013—long after the 300-day window had closed.  Thus, insofar as Forman seeks to challenge her termination from employment as violative of the ADA, her claim is time-barred and, accordingly, must be dismissed.  See Brandon v. O'Mara, No. 10 CV 5174, 2011 WL 4478492, at *4 (S.D.N.Y. Sept. 28, 2011) (dismissing Title VII and ADA claims for the plaintiff's failure to file administrative charges with the EEOC within 300 days of the alleged unlawful employment practices).

      b.   Pleading Standards for Forman's ADA and Rehabilitation Act Claims

"The ADA prohibits discrimination against 'a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'"  Dawson v. N.Y.C. Transit Auth., 624 F. App'x 763, 766 (2d Cir. 2015) (quoting 42 U.S.C. § 12112(a)).  Prohibited discrimination includes both: 1) taking an adverse employment action; and 2) refusing to make a reasonable accommodation that would enable the employee to perform the essential functions of her job.  See 42 U.S.C. § 12112(b)(1)–(7).  "Claims alleging such discrimination are subject to the prima facie case framework elaborated by the Supreme Court" in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Dawson, 624 F. App'x at 766.  To survive a Rule 12(b)(6) motion to dismiss, an ADA claim need only allege facts providing "plausible support to the reduced requirements" of the prima facie case. Littlejohn v. City of N.Y., 795 F.3d 297, 311 (2d Cir. 2015).

Since the same analysis applies to claims brought under the Rehabilitation Act, the Court may rule on Forman's first and second causes of action together.  See McElwee v. Cty. of Orange, 700 F.3d 635, 640 (2d Cir. 2012) ("Because the standards adopted by [the ADA and the Rehabilitation Act] are nearly identical, we consider the merits of these claims together.").

To state a claim for an adverse employment action, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. An individual is qualified for a job "if she is able to perform the essential functions of that job, either with or without a reasonable accommodation." Shannon v. N.Y.C. Transit Auth., 332 F.3d 95, 99–100 (2d Cir. 2003). "'Essential functions' are defined under EEOC regulations to mean the 'fundamental duties to be performed in the position in question, but not functions that are merely marginal.'" Id. at 100 (quoting Stone v. City of Mt. Vernon, 118 F.3d 92, 97 (2d Cir. 1997)). "A reasonable accommodation can never involve the elimination of an essential function of a job." Id. (citing Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991)).

"To plead a failure-to-accommodate claim, a plaintiff must allege that '(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" Dooley v. JetBlue Airways Corp., 636 Fed. App'x 16 (2d Cir. 2015) (quoting McMillan v. City of N.Y., 711 F.3d 120, 125–26 (2d Cir. 2013)). A reasonable accommodation may include "reassignment to a vacant position." McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009) (citing 42 U.S.C. § 12111(9)).

    c.   The Remaining ADA and Rehabilitation Act Claims

The City moves to dismiss Forman's ADA and Rehabilitation Act claims for wrongful termination, failure to accommodate, and denial of reinstatement, arguing that they do not satisfy the pleading standard set forth in Iqbal. The City asserts that the content of the

Amended Complaint is conclusory, and proffers documentation pertaining to Forman's application for and receipt of social security disability benefits.  (See Ex. 8 to Mou Decl., docket entry no. 43.)

As noted above, in ruling on the instant motion, "the Court may only consider the complaint and documents incorporated by reference or otherwise integral to the allegations of the complaint."  Kone v. Joy Construction Corp., No. 15 CV 1328, 2016 WL 866349 (S.D.N.Y. Mar. 3, 2016) (citing Chambers v. Time Warner, 282 F.3d 147, 153–54 (2d Cir. 2002)).  A document may be "otherwise integral" if the plaintiff relied on it in drafting her complaint.  See Chambers, 282 F.3d at 153 ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.").

To the extent the City's motion is premised on facts drawn from the social security-related documents, it reaches outside the permissible scope of materials that can be evaluated on a motion to dismiss.  The Amended Complaint does not refer to these documents, nor does it appear that Forman relied on them in drafting the complaint.  Accordingly, the Court will not consider these documents in ruling on the instant motion.  The City's arguments with respect to the insufficiency of the content of the Amended Complaint are, however, well founded.

Plaintiff's complaint and exhibits show that the City terminated Forman's employment pursuant to CSL § 73, which provides for termination after a year of absence from work.  Plaintiff does not claim that she was in fact at work or able to return to work at that time.  Therefore, the complaint does not demonstrate that she was qualified for any position at the time her employment was terminated.  See Vandenbroek v. PSEG Power, CT LLC, 356 F. App'x 457, 460 (2d Cir. 2009) (finding that "regularly attending work is an essential function of virtually every job" and that recurring absenteeism therefore renders an employee not qualified for the position).

Forman's conclusory assertion that she "was qualified for her position as a School Safety Agent, and yet she suffered the adverse employment action of termination of her employment by [the City], under circumstances giving rise to an inference of discriminatory intent" (Am. Compl. ¶ 44), is insufficient to constitute a plausible pleading that she was qualified for the position at the time her employment was terminated.  See Sepe v. N.Y.S. Ins. Fund, No. 09 CV 4817, 2010 WL 9461783, at *4 (S.D.N.Y. Sept. 8, 2010) (finding that the plaintiff had no cognizable Title VII claim because the alleged adverse employment actions were taken pursuant to CSL §§ 72 and 73 and the plaintiff failed to make factual allegations rebutting the actions' lawfulness).  For these reasons, her wrongful termination claim under the Rehabilitation Act is dismissed.

Forman alleges that "her [March 2013] request for reinstatement was denied despite the fact that she is disabled and requested a reasonable accommodation to enable her to continue to perform the job of School Safety Agent." (Am. Compl. ¶¶ 38, 45.)  Notwithstanding her implicit assertion that she could have performed the job with reasonable accommodation, she fails to allege any facts demonstrating that she could have done so, and the exhibits annexed to her complaint indicate that she was unable at the time to perform the essential functions of the School Safety Agent job.  The School Safety Agent job description makes clear that the vast majority of the position's essential functions, which include patrolling school buildings and surrounding areas, responding to altercations and attempting to separate the involved persons, and apprehending persons violating the Penal Law, are physically demanding.  (See Id. Ex. 7.)  When Forman applied for reinstatement, she listed three disabilities—hypertension, osteoarthritis, and a herniated disc—which she alleges had the combined effect of substantially limiting her in major life activities.  The application contained a physician's certification ostensibly clearing Forman to return to work only with respect to Forman's hypertension.  She offered no facts as to the effect of her other conditions

or relevant tasks of which she was capable despite those conditions.  Moreover, CID's follow-up letter to DCAS specifically stated that Forman still suffered from these disabilities and that they prevented her from sitting or standing for long periods of time.  In that letter, Forman requested that she be reassigned—that is, given a completely different position—as an accommodation.  This request can only be construed as a tacit admission that Forman <u>was not</u> qualified to perform the essential duties of School Safety Agent, <u>with or without</u> a reasonable accommodation.  Forman has thus failed to allege facts supporting plausibly her assertion that "there is no legitimate basis for [the City's] failure to provide [her] a reasonable accommodation to continue to perform the job of School Safety Agent."  (<u>Id.</u> ¶ 26.)

The City's motion to dismiss the ADA and Rehabilitation Act claims for failure to accommodate and denial of reinstatement is, therefore, granted.

III.     <u>Forman's State and City Claims</u>

a.     <u>The Election-of-Remedies Doctrine Bars Forman's SHRL and CHRL Claims</u>

The City moves to dismiss Forman's SHRL and CHRL claims, arguing that the election-of-remedies doctrine bars this Court from hearing them.  The Court agrees.

The SHRL and CHRL both provide that a plaintiff who files a complaint with the SDHR thereby waives the right to bring a related action in court.  <u>See</u> N.Y. Exec. Law § 279(9); N.Y.C. Admin. Code § 8–502(a).  "Thus, both the NYSHRL and the NYCHRL require dismissal of a suit in court if the complainant lodges a complaint with either the SDHR or the Commission. This bar applies in federal as well as state court."  <u>Higgins v. NYP Holdings, Inc.</u>, 836 F. Supp. 2d 182, 187 (S.D.N.Y. 2011) (citing <u>York v. Ass'n of the Bar of the City of New York</u>, 286 F.3d 122, 127 (2d Cir. 2002)).  "The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)."  <u>Id.</u> (citing

Moodie v. Fed. Reserve Bank of New York, 58 F.3d 879, 882–83 (2d Cir. 1995)).  "The election

of remedies bar also precludes consideration of any claim—whether brought under the NYSHRL

or the NYCHRL—arising out of the same incident on which [plaintiff's] SDHR complaint was

based."  Id. at 188.

        The Amended Complaint and the Verified Complaint are based on the same

incidents, namely, the City's decision to deny Forman's application for reinstatement and her

request for an accommodation.  (See Ex. 3 to Mou Decl., docket entry no. 49.)  The SDHR

investigated and dismissed the discrimination claims asserted in the Verified Complaint.  (See id.)

Thus, the election-of-remedies doctrine applies.  See Guardino v. Village of Scarsdale Police

Dept., 815 F. Supp. 2d 643, 646 (S.D.N.Y. 2011) ("When the [SDHR] has issued a finding of no

probable cause[,] plaintiff's claims are barred by the law's election of remedies provision because

plaintiff has already litigated the claims before the [SDHR]." (internal alterations and citation

omitted)).

        Forman does not dispute that the Amended Complaint essentially mirrors the

Verified Complaint.  Instead, she tries to reframe the election-of-remedies standard as one whose

fundamental focus is on whether she had a full and fair opportunity to litigate her claims before

the SDHR.  (See Pl.'s Mem. of Law at 4, docket entry no. 47.)  But that is not the standard.  In

fact, whether or not Forman had such an opportunity, the election-of-remedies doctrine applies

and her SHRL and CHRL claims must be dismissed pursuant to Rule 12(b)(1).  See Smith v. City

of New York, No. 03 Civ. 1252, 2008 WL 1970316, at *8–9 (S.D.N.Y. May 6, 2008) (finding that

issue preclusion did not apply because the plaintiff did not have a full and fair opportunity to

litigate his claim before the SDHR, but applying the election-of-remedies doctrine to dismiss the

plaintiff's SHRL and CHRL claims because of their similarity to an SDHR claim).

The City's motion to dismiss the SHRL and CHRL claims is, therefore, granted.

b.  The Court Declines to Exercise Jurisdiction of the Remaining State and City Claims

The Court may exercise supplemental jurisdiction over related state-law claims when an independent basis of subject-matter jurisdiction exists.   See 28 U.S.C. § 1367(a). However, even where such a basis exists, the Court may, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c).  One such circumstance is where the Court "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

"The strong preference in this Circuit is for district courts to decline to exercise supplemental jurisdiction under § 1367(c)(3) when all of the federal claims are dismissed from the suit prior to trial."  Schiffman v. Epstein, No. 04 Civ. 2661, 2009 WL 1787760, at *7 (S.D.N.Y. Jun. 23, 2009) (citing Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006)).  Still, there are cases in which the retention of supplemental jurisdiction is appropriate, such as "when the remaining state law claims are linked to unique federal interests, when dismissal of the federal claims comes days before the commencement of trial," or "when the court has expended significant time in discovery and dispositive motion practice prior to dismissal of the federal claims."  Id. Here, Forman's federal claims are being dismissed at the very beginning of the case—long before trial, and before the Court "has expended significant time in discovery and dispositive motion practice."  Furthermore, Forman's state and city law claims are not "linked to unique federal interests."  For these reasons, the Court declines to exercise supplemental jurisdiction of the remaining claims.

CONCLUSION

For the foregoing reasons, the City's motion to dismiss is granted as to Forman's federal, SHRL, and CHRL claims. The Court declines to exercise supplemental jurisdiction of the remaining state and city claims and, accordingly, dismisses them without prejudice.

This Memorandum Opinion and Order resolves Docket Entry No. 41. The Clerk of Court is respectfully requested to enter judgment accordingly and close this case.

SO ORDERED.


Dated: New York, New York
       March 27, 2017


                                                         /s/ Laura Taylor Swain___
                                                        LAURA TAYLOR SWAIN
                                                        United States District Judge